UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 17-18-DLB-CJS

BRYAN MEECE                                                                  PLAINTIFF

v.                      **MEMORANDUM OPINION AND ORDER**

WILLIAM CUSTER, et al.                                       DEFENDANTS

\*\* \*\* \*\* \*\* \*\*

This matter is before the Court on Defendants William Custer and Savannah Woodworking and Installation, Inc.'s ripe Joint Motion for Summary Judgment. (Doc. # 37). For the reasons set forth herein, Defendants' motion is **granted**.

## I.    FACTUAL BACKGROUND

The facts in this case are undisputed. Plaintiff Bryan Meece ("Meece") was employed by TrueBlue, the corporate parent of staffing firm Labor Ready (a/k/a PeopleReady, Inc.). (Doc. # 37-1 at 2). Labor Ready had been hired by Savannah Woodworking & Installation, Inc. ("Savannah") to provide temporary employees "to assist with a shipment of fixtures to a Homegoods store in Florence, Kentucky." (Doc. # 37-2 at 2). The contract between Labor Ready and Savannah notes that the temporary employees would be compensated at $16.25 per hour for "Clean Up" and "Debris Removal." (Doc. # 37-3). TrueBlue carried workers'-compensation insurance in compliance with Kentucky Law. (Doc. # 37-2).

Meece was one of the TrueBlue employees assigned to work temporarily for Savannah. (Doc. # 37-4 at 2). On February 16, 2016, Meece was working at Homegoods

1

in Florence "assist[ing] with final delivery of the fixtures" into the store. (Doc. # 37-2 at 2); *see also* (Doc. # 1 at ¶ 6). Specifically, he was helping to both unload shelving from tractor trailers on the Homegoods loading dock and reload furniture into a tractor trailer. (Doc. # 1 at ¶¶ 6-9). Meece and another employee "were shifting skids with a pallet at the rear of a tractor trailer" and William Custer ("Custer") was using a forklift to remove the materials from the tractor trailer. *Id.* at ¶ 8. At some point, Meece was stacking furniture to be loaded back into a tractor trailer and Custer backed the forklift into Meece. *Id.* at ¶¶ 9-10. The accident shattered Meece's ankle, and "Meece went into shock" as a result of the injury. *Id.* at ¶ 10.

## II. PROCEDURAL BACKGROUND

Plaintiff Meece filed suit against Custer, Savannah, and Homegoods, Inc. on February 13, 2017. (Doc. # 1). His Complaint included five causes of action—(1) a negligence claim against Custer, (2) a negligence *per se* claim against Savannah, (3) a negligence claim under a theory of *respondeat-superior* liability against Savannah, (4) a negligent-entrustment claim against Homegoods, and (5) a punitive-damages claim against Savannah. *Id.* Homegoods filed its Answer on March 13, 2017, (Doc. # 8), and Savannah filed its Answer the following day. (Doc. # 10). Homegoods was dismissed with prejudice on July 26, 2017, pursuant to an Agreed Order of Dismissal. (Doc. # 25). Custer filed his Answer on September 5, 2017. (Doc. # 31).

On April 30, 2018, remaining Defendants, Custer and Savannah, jointly moved for summary judgment on all claims. (Doc. # 37). Having been granted an extension of time to respond to the Motion, (Doc. # 43), Meece filed his Response to the Motion on May 29, 2018 (Doc. # 44). Custer and Savannah filed separate replies on June 12 and 13, 2018,

respectively. (Docs. # 45 and 46). The Motion is now ripe for the Court's review.

## III. ANALYSIS

### A. Standard of Review

Summary judgment may be granted when there is no genuine issue of material fact, and an issue can be decided as a matter of law. Fed. R. Civ. P. 56(a). It is the job of the Court to consider the evidence presented and determine if there is a genuine issue which requires the matter to proceed to trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In doing so, the Court is not to "weigh the evidence and determine the truth of the matter." *Id.*

The "moving party bears the burden of showing the absence of any genuine issues of material fact." *Miller v. Maddox*, 866 F.3d 386, 389 (6th Cir. 2017). In order to succeed on a motion for summary judgment, the non-moving party must then put forth evidence showing there is a genuine issue of material fact which requires a trial. *Anderson*, 477 U.S. at 250. A court should find that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* Thus, "[a] mere scintilla of evidence" in favor of the non-moving party will not defeat summary judgment. *Id.* at 252.

In considering a summary-judgment motion, a court is required to view the evidence in light most favorable to the non-moving party and draw reasonable inferences in their favor. *Hamilton Cty. Educ. Ass'n v. Hamilton Cty. Bd. of Educ.*, 822 F.3d 831, 835 (6th Cir. 2016).

### B. Applicable Law

A federal court sitting in diversity must apply the substantive law of the state in which it is sitting. *See Hanna v. Plumer*, 380 U.S. 460, 465-66 (1965) (explaining *Erie*

*R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). The Court must look to the controlling decisions of the state's highest court and determine how that high state court would have ruled on the issue before the federal court. *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 453 (6th Cir. 2001); *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999) (citing *Erie R.R. Co.*, 304 U.S. 64). In carrying out this task "[t]he Court may use the decisional law of the state's lower courts, other federal courts construing state law, restatements of law, law review commentaries, and other jurisdictions on the 'majority' rule in making this determination." *Meridian Mut. Ins. Co.*, 197 F.3d at 1181 (citing *Grantham & Mann v. Am. Safety Prods.*, 831 F.2d 596, 608 (6th Cir. 1987)).

This personal-injury case comes before the Court on diversity jurisdiction. (Doc. # 1-1). Thus, the Court must look to Kentucky state law and court decisions, as well as other relevant materials, to determine if summary judgment should be granted in favor of Defendants Savannah and Custer.

### C. Kentucky's up-the-ladder immunity provisions require the Court to grant summary judgment.

In Kentucky, workers' compensation is an exclusive remedy for workers injured on the job, "unless a worker has expressly opted out of the workers' compensation system." *Beaver v. Oakley*, 279 S.W.3d 527, 530 (Ky. 2009); Ky. Rev. Stat. § 342.690(1). In practice, this means that workers who are entitled to workers' compensation are generally unable to recover in negligence suits brought against their employers for on-the-job injuries. *Beaver*, 279 S.W.3d at 530. This immunity for employers extends to contractors, Ky. Rev. Stat. § 342.690(1); Ky. Rev. Stat. § 342.610(2), with the purpose being "to discourage a contractor from subcontracting work that is a regular or recurrent part of its

4

business to an irresponsible subcontractor in an attempt to avoid the expense of workers' compensation benefits." *Gen. Elec. Co. v. Cain*, 236 S.W.3d 579, 585 (Ky. 2007). Thus, a contractor is immune from tort liability resulting from injuries to the employees of their subcontractor if (1) the subcontractor employing the injured worker ensures workers' compensation for its employees and (2) the work being performed by the injured employee is "of a kind which is a *regular or recurrent* part of the work of the trade, business occupation, or profession" of the contractor. Ky. Rev. Stat. § 342.610(2) (emphasis added). This protection from liability for employers, including contractors, is known as up-the-ladder immunity. *Beaver*, 279 S.W.3d at 528 n.1. Up-the-ladder immunity extends, by statute, to employees of the employer or contractor, as well. Ky. Rev. Stat. § 342.690(1).

Up-the-ladder immunity is an affirmative defense, and, therefore, a contractor wishing to avoid liability on this ground must prove both elements of Ky. Rev. Stat. § 342.610(2). *Cain*, 236 S.W.3d at 585. As the presence or absence of workers' compensation benefits is often straightforward, the key issue in determining the application of up-the-ladder immunity is typically whether the worker was injured doing work that was a "regular or recurrent" part of the contractor's business. Ky. Rev. Stat. § 342.610(2). "'Recurrent' simply means occurring again or repeatedly. 'Regular' generally means customary or normal, or happening at fixed intervals. However, neither term requires regularity or recurrence with the preciseness of a clock or calendar." *Daniels v. Louisville Gas and Elec. Co.*, 933 S.W.2d 821, 824 (Ky. Ct. App. 1996). In other words, "regular or recurrent" work is "work that the business repeats with some degree of

regularity, and it is of a kind that the business or similar businesses would normally perform or be expected to perform with employees." *Cain*, 236 S.W.3d at 588.

The Sixth Circuit, in a case strikingly similar to the one before the Court, developed a three-part test (the *Black* test) to determine what type of work is "regular and recurrent" under Kentucky's up-the-ladder framework. *Black v. Dixie Consumer Prods. LLC*, 835 F.3d 579, 585 (6th Cir. 2016). The plaintiff in *Black* was employed by a trucking company and was responsible for delivering raw materials to the Dixie factory in Bowling Green, Kentucky, where Dixie would take the raw materials and turn them into paper goods. *Id.* at 581. Upon arriving at the Dixie plant, Black helped to unload the raw materials from the truck, during which time his foot was run over by a forklift driven by one of Dixie's employees. *Id.*

The question before the *Black* court was whether Dixie, as a contractor who hired Black's employer as a subcontractor, was entitled to up-the-ladder immunity from Black's tort claim. *Id.* at 581-82. In determining whether work performed by a subcontractor, such as Black's employer, is regular and recurrent, the *Black* test considers three factors: (1) whether the subcontractor was hired to perform the work during which the injury occurred; (2) whether the subcontractor's work was a customary or usual part of the contractor's business, or work that the contractor repeats "with some degree of regularity;" and (3) whether the work was that which the contractor "or a similar business would normally perform or be expected to perform with employees." *Id.* at 585 (internal quotation marks and citations omitted). If all three inquiries are answered affirmatively, the Sixth Circuit finds the "regular and recurrent" requirement to be met. *Id.*

6

Here, the answers to the second and third inquiries of the *Black* test are clear. The *Black* Court found unloading raw materials at the Dixie factory to be "a customary, usual or normal part of business" that is repeated with some regularity because "[u]nless Dixie entered the business of producing raw paper . . . it necessarily needed to receive and unload regular deliveries of paper" in order to carry out its production of paper goods. *Id.* (internal quotations and citations omitted). Similarly, Savannah, as a company that installs display fixtures at stores, must move shelving materials and furniture on a regular and recurrent basis in order to carry out its business. (Doc. # 37-2 at 1). Thus, the second prong of the *Black* test is met.

Additionally, the *Black* court found that the delivery services provided by Black's employer "is work that a company similar to Dixie might very well handle or be expected to handle with its own private fleet" even if Dixie never used its own employees to perform deliveries and unloading of raw materials. *Black*, 835 F.3d at 587. Here, the situation is analogous; a company similar to Savannah might use its own employees to unload materials, load furniture and other materials on to trucks, and clean up debris, rather than hiring temporary employees like Meece to carry out the work. Therefore, the third prong of the *Black* test is met.

The first factor of the *Black* test is a closer call for the Court; namely, whether the work being performed by Meece when he was injured is work that Meece's employer, Labor Ready, was "hired to perform." *Id.* at 585 (quoting *Cain*, 236 S.W.3d at 588). Meece was injured while stacking "a bundle or furniture . . . to be returned to the [tractor] trailer." (Doc. # 1 at ¶ 9). As pointed out by Meece in his brief, the contract between Labor Ready and Savannah, a subcontractor and contractor, respectively, lists the job

duties of the temporary employees as "Clean Up, Debris Removal." (Docs. # 37-3 and 44 at 5). In contrast, the manager of Savannah stated in her affidavit that the temporary employees were hired to "assist with a shipment of fixtures to a Homegoods store in Florence, Kentucky," more generally. (Doc. # 37-2 at 2).

The Kentucky Supreme Court requires that the Court "must construe the role of contractor in a practical and functional—not hypertechnical—way." *Beaver*, 279 S.W.3d at 532. While "work assumed by contract or required by law" may be "regular and recurrent," the Kentucky Supreme Court has found that "the test [to determine whether an entity is a contractor] is relative." *Cain*, 236 S.W.3d at 588.

In one of the Kentucky Supreme Court's more recent published cases dealing with up-the-ladder immunity, that Court found "the main question at issue [in a seminal up-the-ladder immunity case] . . . was whether the work performed was regular and recurrent, seemingly not whether the 'contractor' (a developer) had a 'contract' with the plaintiff's direct employer (a carpentry company)." *Beaver*, 279 S.W.3d at 534 n.28 (discussing *Fireman's Fund Ins. Co. v. Sherman & Fletcher*, 705 S.W.2d 459, 462 (Ky. 1986)). Additionally, the *Black* court in addressing the "hired to perform" prong of the test found that "[i]t matters not that the carriage agreement does not spell out every step of the 'transport and deliver[y]' . . . [w]hat matters is what Black acknowledges: He was "[w]orking and helping in the transportation of freight' while unloading the rubber mats" which is when he was injured. *Black*, 835 F.3d at 585 (citations omitted). These cases suggest that the presence of a contract is not necessary for work to be "regular or recurrent," and that the exact wording of a contract is not critical to the determination of whether an entity is a contractor under the up-the-ladder immunity provisions. *See supra*.

The guidance provided by the Kentucky Supreme Court in *Beaver* and *Black* persuade the Court to construe the "hired to perform" prong of the *Black* test broadly. In doing so, the Court reads the contract for "clean up" and "debris removal" broadly and finds that Meece was undertaking work that could be considered "clean up" or "debris removal" when stacking "a bundle of furniture . . . against the building to be returned to the trailer." (Doc. # 1 at ¶ 9); *see also* (Doc. # 37-3). To do otherwise would exalt form over substance. The Court, therefore, finds that Meece was undertaking work he was "hired to perform" when he was injured by the forklift. (Doc. # 37-3).

Plaintiff's argument that this prong of the *Black* test is not met, and therefore there can be no immunity for Savannah because Meece was doing work he was not contracted to perform, is misguided. Plaintiff's argument artificially narrows the scope of the relevant inquiry and mischaracterizes the allegations in his Complaint. In his Response to the Motion for Summary Judgment, Plaintiff does not accurately summarize the facts in his Complaint; he asserts that "Bryan was run over by a forklift operated by William Custer while inside a tractor trailer *unloading* skids of materials for the Homegoods store in Florence." (Doc. # 44 at 2) (citing Doc # 1 at ¶¶ 6-10) (emphasis added). Plaintiff's Complaint clearly alleges, however, that Meece was preparing to *load* "a bundle of furniture" into the tractor trailer when he was injured. (Doc. # 1 at ¶ 9). Meece does not contest the facts as laid out in his Complaint, but merely misrepresents the facts in an apparent attempt to bolster his argument.

As all three prongs of the *Black* test are met, the court finds that Meece was performing "regular or recurrent" work of Savannah when he was injured. Therefore,

Savannah is considered a contractor potentially entitled to immunity under the up-the-ladder immunity provisions. Ky. Rev. Stat. § 342.610(2)

The Court's conclusion is consistent with the purpose of the up-the-ladder immunity provisions—to ensure contractors hire responsible subcontractors that provide workers' compensation for their employees. *Cain*, 236 S.W.3d at 585. Here, *see infra*, Savannah did hire a subcontractor that provided workers' compensation benefits as the law intended it to do.

Moreover, this result is consistent with Kentucky Supreme Court precedent dealing with temporary employees and up-the-ladder immunity. The Kentucky Supreme Court has specifically held that "a company that contract[s] with a temporary labor service for temporary employees [is] a contractor for the purposes of Chapter 342;" thus, a company hiring temporary employees is immune "from a temporary employee's tort action." *Labor Ready, Inc. v. Johnston*, 289 S.E.3d 200, 201 (Ky. 2009) (citing *U.S. Fid. & Guar. Co. v. Tech.l Minerals, Inc.*, 934 S.W.2d 266 (Ky. 1996))*.* This result makes sense—"[a]s a practical matter, if the statute [Ky. Rev. Stat. § 342.610(2)] . . . allow[ed] a common law civil action against an employer who obtains a temporary employee through a temporary services company, no employer in his right mind would hire such an employee . . . [which would] destroy the temporary services industry." *U.S. Fid. & Guar. Co.*, 934 S.W.2d at 269.

The second requirement a contractor must prove to be granted up-the-ladder immunity is that the subcontractor provided workers' compensation for its employees. Ky. Rev. Stat. § 342.610(2). Here, this requirement is easily met. The contract between Labor Ready and Savannah states clearly that Labor Ready is responsible for providing

"workers' compensation insurance as required by law for temporary workers." (Doc. # 37-3). In fact, Meece took full advantage of those benefits after his injury. (Doc. # 44 at 2).

As both requirements of Ky. Rev. Stat. § 342.610(2) are met—Savannah is a contractor under law, and Savannah's subcontractor (Labor Ready/TrueBlue) guaranteed workers' compensation for Meece—Savannah is entitled to up-the-ladder immunity from Meece's claim. Additionally, as an employee of Savannah, Custer is also entitled to that same immunity. Ky. Rev. Stat. § 342.690(1).

## IV. CONCLUSION

For the reasons articulated herein, **IT IS HEREBY ORDERED** that:

(1) Defendants' Joint Motion for Summary Judgment (Doc. # 37) is **GRANTED**;

(2) This case is **DISMISSED** and **STRICKEN** from the Court's docket; and

(3) The Court will enter a Judgment contemporaneously with this Order.

This 27th day of November, 2018.



Signed By:
*David L. Bunning* DB
United States District Judge

K:\DATA\ORDERS\Cov2017\17-18 Order on MSJ.docx

11